UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD SMITH et al., | No.  2:19-cv-01426-TLN-CKD |
| Plaintiffs, | |
| v. | **ORDER** |
| COUNTY OF SACRAMENTO et al., | |
| Defendants. | |

This matter is before the Court on Defendant Angela Vickers, M.D.'s ("Defendant") Motion for Summary Judgment.  (ECF No. 43.)  Plaintiffs Clifford Smith ("Smith") and Kristina Fleshman ("Fleshman") (collectively, "Plaintiffs") filed an opposition.  (ECF No. 52.)  Defendant filed a reply.   (ECF No. 53.)  For the reasons set forth below, Defendant's motion is DENIED.

///
///
///
///
///
///
///
///

1

I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On June 25, 2017, Plaintiffs brought their two-month-old son, J.S., to a Sutter Health hospital for treatment of "a number of medical issues including . . . vomiting and gasping for air after feeding."  (ECF No. 1, Ex. B ¶ 33; ECF No. 43-3, Ex. A.)  A physician evaluated J.S., prescribed medication for acid reflux, and discharged him into the care of Plaintiffs.  (ECF No. 1, Ex. B ¶ 33.)

Later that day, another child allegedly bumped into Fleshman while she was feeding J.S. with a bottle, causing injury to J.S.'s mouth.  (ECF No. 1, Ex. B ¶ 34; ECF No. 43-1 at 2.)  Plaintiffs took J.S. to the medical center at the University of California, Davis ("UC Davis") for treatment and consented in writing to the performance of medical services.[2]  (ECF No. 52-3 at 2.)  The attending physician diagnosed J.S. with a torn frenulum in his mouth and documented bruising on his head.  (Id.)  Based on the location and type of injury J.S. sustained, UC Davis medical staff suspected J.S. suffered from non-accidental trauma and contacted Defendant, Director of the Bridging Evidence Assessment and Resources program at Sutter Health, for her advice and input.  (Id. at 2–3; ECF No. 43-3, Ex. F ¶¶ 3, 6.)  Defendant reviewed the information related to J.S.'s injuries and agreed with UC Davis medical staff that non-accidental trauma might be the cause of J.S.'s injuries and recommended medical staff perform a bone survey.[3]  (ECF No. 52-3 at 3.)  Meanwhile, UC Davis medical staff contacted local authorities regarding Plaintiffs' purported child abuse, and J.S. was thereafter placed into protective custody.  (ECF No. 1, Ex. B ¶ 36; ECF No. 43-1 at 3.)  J.S.'s bone survey results came back normal.  (ECF No. 43-3 at 9; ECF No. 52-3 at 3; ECF No. 52-1 at 6.)

The next day, a county social worker called Defendant regarding Plaintiffs' alleged child

---

[1]    The facts herein are undisputed unless otherwise indicated.

[2]    Defendant contends Fleshman's consent encompasses the bone survey that was subsequently performed, but Plaintiffs contend consent was only given to treat J.S.'s injured mouth.  (See ECF No. 43-1 at 5–6; ECF No. 52-3 at 2.)

[3]    The parties dispute whether Defendant ordered J.S.'s bone survey.  (See ECF No. 52-3 at 3.)

abuse.  (ECF No. 52-3 at 3.)  During that conversation, Defendant expressed her concern that J.S.'s sister, V.S., was at risk of physical abuse in light of J.S.'s injuries and recommended medical staff perform a physical examination of V.S.  (ECF No. 52-3 at 3.)  Shortly thereafter, the social worker arrived with police at Plaintiffs' home and placed V.S. into protective custody.  (*Id.* at 4.)  Fleshman provided oral consent[4] for medical care for V.S. and one of the nurse practitioners that Defendant supervises subsequently performed a bone survey on V.S. at Defendant's request.[5]  (*Id.* at 4–5.)

In November 2018, Plaintiffs filed a complaint in state court against Defendant and several co-defendants alleging, among other things, Defendant performed or caused to be performed an unwarranted and nonconsensual forensic medical examination on J.S. and V.S. in violation of 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  (ECF No. 1, Ex. B.)  Defendant removed the action to this Court (ECF No. 1 at 1–5) and subsequently moved to dismiss both claims (ECF No. 6).  The Court granted in part Defendant's motion and dismissed Plaintiffs' *Monell* claim but denied Defendant's motion as to Plaintiffs' § 1983 claim. (ECF No. 14.)  On October 7, 2022, Defendant filed the instant motion for summary judgment.[6] (ECF No. 43.)

///

///

---

[4]     Defendant contends Fleshman's consent to medical care encompassed the bone survey medical staff performed.  (*See* ECF No. 43-1 at 6; ECF No. 52-3 at 4.)  Plaintiffs maintain that consent was only given for medical care in the event V.S. became injured or ill.  (*See* ECF No. 52-2.)

[5]     Plaintiffs contend a genuine issue of material fact exists as to whether Defendant *ordered* the bone survey for V.S.  (*See* ECF No. 52 at 3–4.)  However, Plaintiffs also did not dispute that "[a]lthough Defendant's name is listed as the ordering provider on the radiology report, she did not order that study . . . ."  (ECF No. 52–3 at 5.)  The Court declines to treat this latter stipulation as a binding judicial admission because it was likely made in advertence, evidenced by Plaintiffs' subsequent opposition motion that is dated one day after the purported admission.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (district courts have discretion to determine whether statements are binding judicial admission); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 860 (9th Cir. 1995) (subsequent statements explaining ostensible judicial admission must be given due weight).

[6] The other codefendants settled out of court.  (*See* ECF No. 67.)

1    **II.    STANDARD OF LAW**

2         Summary judgment is appropriate when the moving party demonstrates no genuine issue

3    of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

4    R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

5    judgment practice, the moving party always bears the initial responsibility of informing the

6    district court of the basis of its motion, and identifying those portions of "the pleadings,

7    depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

8    which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

9    *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

10   at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

11   solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

12   324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

13   party who does not make a showing sufficient to establish the existence of an element essential to

14   that party's case, and on which that party will bear the burden of proof at trial.

15        If the moving party meets its initial responsibility, the burden then shifts to the opposing

16   party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

17   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

18   *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

19   the opposing party may not rely upon the denials of its pleadings, but is required to tender

20   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

21   support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

22   demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

23   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

24   the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

25   the nonmoving party.  *Id.* at 251–52.

26        In the endeavor to establish the existence of a factual dispute, the opposing party need not

27   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

28   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4

1   trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

2   to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

3   trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's

4   note on 1963 amendments).

5          In resolving the summary judgment motion, the court examines the pleadings, depositions,

6   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

7   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

8   of the opposing party is to be believed and all reasonable inferences that may be drawn from the

9   facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

10  at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

11  obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

12  *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

13  1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

14  "must do more than simply show that there is some metaphysical doubt as to the material facts."

15  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

16  a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at

17  587.

18          **III.   ANALYSIS**

19          Defendant contends there is no genuine dispute as to any material fact and that she is

20  entitled to judgment as a matter of law as to Plaintiffs' § 1983 claim because: (1) she did not

21  perform or order any physical examination of J.S. or V.S.; (2) Fleshman consented to the physical

22  examinations of J.S. and V.S.; (3) Defendant is not a state actor; (4) she did not act under color of

23  state law; and (5) even if she acted under color of state law, she is entitled to qualified immunity.

24  (*See* ECF No. 43–1 at 5–13.)  Plaintiffs oppose summary judgment on the bases that a genuine

25  dispute of material fact exists, and qualified immunity does not apply to forensic examinations.

26  (*See* ECF No. 52 at 3–12.)  The Court addresses each argument in turn.

27  ///

28  ///

1              A.      Physical Examination of J.S. and V.S.

2              It is undisputed Defendant did not perform any physical examination of J.S. or V.S.  (ECF

3     No. 52-3 at 6.)  Defendant contends she also did not order any physical examination of J.S. or

4     V.S. and therefore cannot be liable for allegedly violating Plaintiffs' right to make important

5     medical decisions for their children as a matter of law.  (*See* ECF No. 43 at 5.)  In support of her

6     contention, Defendant cites to her own declaration which states that she did not make any

7     treatment orders for J.S. or V.S.  (*Id.*; ECF No. 43-3, Ex. F.)

8              Plaintiffs argue that a genuine dispute exists regarding whether Defendant's

9     "recommendation" to medical staff, including a subordinate employee, that certain medical

10    treatment be performed on J.S. and V.S. is akin to an order that brought about the alleged

11    unconstitutional examinations.  (*See* ECF No. 52 at 3–4.)  In other words, Plaintiffs maintain

12    Defendant proximately caused the purported unlawful examinations of J.S. and V.S.

13    notwithstanding the fact that she did not perform the exams herself.  (*See id.*)  To bolster their

14    claims, Plaintiffs submitted excerpts from the Sacramento County Child Protective Services daily

15    service logs.  (ECF No. 52–1, Ex. A.)  One of the logs states Defendant "requested" exams of J.S.

16    and V.S. and another states that Defendant ordered an exam of V.S.  (*Id.* at 6, 12.)

17            "The right to family association includes the right of parents to make important medical

18    decisions for their children, and of children to have those decisions made by their parents rather

19    than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000).  Absent parental consent

20    or "a reasonable concern that material physical evidence might dissipate or that some urgent

21    medical problem exists requiring immediate attention, the state is required to notify parents and to

22    obtain judicial approval before children are subjected to investigatory physical examinations." *Id.*

23    (citation omitted).  The state's failure to do so violates parents' Fourteenth Amendment

24    substantive due process rights. *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1160–61 (9th Cir.

25    2018).

26            The Ninth Circuit has also held that a supervisor may be liable under § 1983 "if there

27    exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

28    sufficient causal connection between the supervisor's wrongful conduct and the constitutional

6

1    violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885

2    F.2d 642, 646 (9th Cir. 1989)).  "[A] plaintiff must show the supervisor breached a duty to

3    plaintiff which was the proximate cause of the injury." *Id.* (quoting *Redman v. Cnty. of San*

4    *Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991).

5           The Court finds that a genuine dispute of material fact exists as to whether Defendant

6    ordered the physical examinations of J.S. and V.S.  As the moving party, Defendant carries the

7    initial burden of "identifying those portions of 'the pleadings, depositions, answers to

8    interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

9    demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.

10   The only evidence Defendant presents in support of her contention that she did not order any

11   examination of J.S. or V.S. is a self-serving declaration, which the Court finds insufficient to

12   demonstrate the absence of a genuine issue of material fact.  *Cf. F.T.C. v. Publ'g Clearing House,*

13   *Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self–

14   serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a

15   genuine issue of material fact.").  In any event, Plaintiffs dispute Defendant's allegation that she

16   did not order the exams of J.S. and V.S. (ECF No. 52-3 at 3, 6) and maintain that she is liable for

17   the conduct of her subordinate employee (ECF No. 52 at 3-4.)  The Sacramento County Child

18   Protective Services daily service logs (ECF No. 52-1, Ex. A) and Defendant's own admission that

19   she recommended a bone survey and her supervisee performed the procedure on V.S.,

20   demonstrate that a genuine dispute of material fact exists as to whether Defendant ordered the

21   physical examinations of J.S. and V.S., which may result in supervisory liability under § 1983.

22   *See Starr*, 652 F.3d at 1207; *infra* Section III.B.  Thus, the Court finds that Plaintiffs have put

23   forth sufficient evidence to preclude summary judgment on this basis.

24           B.      Consent to Physical Examinations of J.S. and V.S.

25           As discussed above, parental consent or judicial approval is generally required before

26   children may be subjected to investigatory physical examinations.  *Wallis*, 202 F.3d at 1141.

27   Judicial approval was not obtained here, and it is undisputed that Plaintiffs consented in writing

28   for J.S. and orally for V.S. to the performance of certain medical services.  (ECF No. 52-3 at 2.)

1  The question then turns to whether Plaintiffs' consent encompasses the examinations complained

2  of.

3          Prior to admission to the UC Davis Medical Center, Fleshman signed a medical consent

4  form for J.S. which read:

5          I consent to any medical treatments or procedures, X-ray
           examinations, drawing blood for tests, medications, injections,
6          taking of medical photographs, videotaping, laboratory procedures,
           and hospital services (except for those which require special consent)
7          rendered to me under the general and special instructions of the
           attending physicians, or other physicians of UCDHS assisting in my
8          care.

9  (ECF No. 43-3, Ex. A.)  Plaintiffs also orally consented to medical care for V.S. after

10  local authorities placed her into protective custody.  (ECF No. 52-3 at 4.)  Defendant

11  argues that by virtue of Plaintiffs providing consent, both written and oral, for J.S. and

12  V.S., their claim of "unwarranted, non-consensual physical examination is nonviable."

13  (ECF No. 43-1 at 6.)

14          Plaintiffs, on the other hand, contend Defendant exceeded the scope of the consent that

15  was given to her by ordering the physical examinations of J.S. and V.S.  (ECF No. 52 at 5–6;

16  ECF No. 52-2 at 2–3.)  Specifically, Plaintiffs maintain consent for J.S. was given for the sole

17  purpose of treating his injured mouth, and consent for V.S. was given only if a medical need

18  presented itself, which they contend had not.  (ECF No. 52 at 5–6; ECF No. 52-2 at 2–3.)

19  Plaintiffs support their position with a declaration from Fleshman that outlines the circumstances

20  surrounding the consent she gave for the treatment of J.S. and V.S. and the purported limits

21  thereto.  (*See* ECF No. 52–2.)

22          The Court finds that a genuine dispute exists as to whether Plaintiffs consented to the

23  physical examinations of J.S. and V.S.  The question of whether the scope of consent was

24  exceeded is a factual one.  *See, e.g.*, *United States v. Rubio*, 727 F.2d 786, 797 (9th Cir. 1983);

25  *Lucero v. Donovan*, 354 F.2d 16, 20 (9th Cir. 1965).  Plaintiffs submitted a declaration from

26  Fleshman that reads, in pertinent part:

27          2.     On or about June 25, 2017, my husband and I brought our son
                  to UC Davis medical center for care and treatment of bleeding in his
28                mouth.  As part of our admission to the hospital I was asked to sign

8

a document to allow the medical doctors to provide needed medical care and treatment for the injury which my son had sustained.

3.      At no time did anyone advise or indicate to me that this document would authorize anything other than for the necessary medical care and treatment for my sons injury.

5.      Had anyone indicted that this document would authorize anything other than for the care and treatment of the bleeding from the mouth that my son was experiencing, I would not have signed the document.

6.      [R]epresentatives of CPS removed my child [V.S.] from my custody.  I was asked if in the event of injury or medical need I would allow doctors to treat the medical needs of my child.  As a concerned mother I certainly wanted my new born daughter to receive medical care in the event of injury or disease and I consented to such care.

7.      What I did not consent to was for CPS and medical doctors to have conspired to remove my child from my custody in order to conduct investigative and forensic examinations to assist in their investigation of alleged child abuse.

(ECF No. 52-2.)  While a self-serving declaration ordinarily is insufficient to create a genuine issue of material fact, *see F.T.C.*, 104 F.3d at 1171, Fleshman's declaration is not conclusory, and it provides a detailed recitation of her version of events.  Moreover, consent is an affirmative defense that *Defendant* will have to prove at trial, not Plaintiffs.  *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (party asserting affirmative defense has burden of proof).  Had the burden of proving a lack of consent rested with Plaintiffs, summary judgment may have been appropriate.  *See Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, *and on which that party will bear the burden of proof at trial*.")  But this is not the case.  Thus, the Court finds that a genuine dispute exists as to whether Plaintiffs consented to the physical examinations of J.S. and V.S.

///

///

///

///

///

9

1    C.    <u>State Action</u>[7]

2           To prevail in an action brought under § 1983, a plaintiff "must establish that they were

3    deprived of a right secured by the Constitution or laws of the United States, and that the alleged

4    deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526

5    U.S. 40, 49–50 (1999).  Defendant contends she is not a state actor, and therefore cannot be

6    liable, because she is a private physician not employed by any governmental entity.  (ECF No.

7    43-1 at 7.)  Defendant further contends that she did not act under color of state law because any

8    action she took did not significantly involve the state.  (ECF No. 43-1 at 7–12.)  Plaintiffs

9    disagree and argue that Defendant acted under color of state law because she cooperated

10   extensively with the government (i.e., law enforcement, UC Davis medical staff, and county

11   social workers) on forensic matters, including ordering the physical examinations of J.S. and V.S.

12   (ECF No. 52 at 7–10.)  In support of their argument, Plaintiffs again rely on the Sacramento

13   County Child Protective Services daily service logs which document the numerous interactions

14   Defendant had with government officials.  (*See* ECF No. 52-1, Ex. A.)

15           "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-

16   state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how

17   discriminatory or wrongful[.]'"  *Sullivan*, 526 U.S. at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991,

18   1002 (1982)).  "Action taken by private individuals may be 'under color of state law' where there

19   is 'significant' state involvement in the action."  *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir.

20   1983).  The Supreme Court has articulated a number of tests to determine when action taken by

21   private individuals significantly involves the state.  *See, e.g.*, *Brentwood Acad. v. Tennessee

22   Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) (governmental nexus test); *Burton v.

23   Wilmington Parking Authority*, 365 U.S. 715 (1961) (joint action test); *Marsh v. Alabama*, 326

24   U.S. 501 (1946) (public function test); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (state

25   ─────────────
     [7]      The parties dispute whether Defendant is a state actor and whether she acted under color

26   of state law.  (*See* ECF No. 43-1 at 7–12; ECF No. 52 at 7–9.)  While related, these two concepts
     are distinct.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982).  Nevertheless,

27   "[w]here, as here, deprivations of rights under the Fourteenth Amendment are alleged, these two
     requirements converge."  *Sullivan*, 526 U.S. at 50 n.8.  The Court therefore addresses these two

28   concepts together.

                                                    10

1   compulsion test).  Of these tests, two merit closer consideration: the joint action and

2   governmental nexus tests.

3        Under the joint action test, a private party acts under color of state law if "he is a willful

4   participant in joint action with the State or its agents."  *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

5   Under the governmental nexus test, a private party acts under color of state law if "there is a

6   sufficiently close nexus between the State and the challenged action . . . so that the action of the

7   latter may be fairly treated as that of the State itself."  *Jackson v. Metropolitan Edison Co.*, 419

8   U.S. 345, 351 (1974).

9        Applying the joint action and governmental nexus tests, the Court finds that Plaintiffs

10   have produced sufficient evidence to create a genuine dispute as to whether Defendant acted

11   under color of state law.  While there is no binding precedent directly on point, a few cases from

12   the Second Circuit are instructive.  In *Kia P. v. McIntyre*, 235 F.3d 749 (2d Cir. 2000), the Second

13   Circuit found that a private hospital was not a state actor when it admitted and treated a minor for

14   possible methadone withdrawal but *was* a state actor when it held the child after he or she was

15   medically cleared while it waited for a response from the child welfare administration regarding

16   the child.  Specifically, the court found the hospital was a state actor under § 1983 to the extent it

17   was acting as part of the reporting and enforcement machinery for the child welfare

18   administration — a government agency charged with the detection and prevention of child abuse

19   and neglect.  *Id.* at 756–57.

20        Similarly, in *Estiverne v. Esernio-Jenssen*, 833 F. Supp. 2d 356 (E.D. N.Y. 2011), the

21   district court found that a private hospital is not subject to liability under § 1983 when it admits a

22   child for medical reasons, even if possible abuse partially informs the decision to admit.  When

23   the hospital continues to detain a child for investigatory purposes after medical treatment has

24   concluded, however, the hospital becomes part of the reporting and enforcement machinery of the

25   state, and thus, a state actor under § 1983.  *Id.* at 367–68.

26        In the instant case, it is undisputed that law enforcement placed J.S. into protective

27   custody after Plaintiffs brought him to the UC Davis Medical Center to treat his injured mouth.

28   (ECF No. 52–3 at 2.)  While in protective custody, Defendant ostensibly ordered J.S.'s bone

11

1   survey after UC Davis medical staff treated him for his mouth injury.  (*See* ECF No. 52-1, Ex. A

2   at 6, 12.)  The following day, county social workers, with the assistance of law enforcement,

3   placed V.S. into protective custody and Defendant ostensibly ordered a bone survey for her too,

4   despite V.S. not presenting with any medical need.  (*Id.*)  Plaintiffs contend that Defendant was a

5   willful participant in joint action with the social workers responsible for investigating possible

6   abuse, and therefore, part of the reporting and enforcement machinery of the state.  (ECF No. 52

7   at 7–10.)  A reasonable jury could conclude that the evidence Planitiffs produced supports such a

8   finding.  (*See* ECF No. 52-1, Ex. A.)   Thus, the Court finds a genuine dispute exists as to whether

9   Defendant acted under color of state law.

10          D.       Qualified Immunity.

11          Finally, Defendant contends that even if she acted under color of state law, she is entitled

12   to qualified immunity.  (*See* ECF No. 43-1 at 12–13.)  In opposition, Plaintiffs argue Defendant is

13   not entitled to qualified immunity because she violated clearly established federal law.  (ECF No.

14   52 at 10–12.)

15          "Qualified immunity strikes a balance between compensating those who have been injured

16   by official conduct and protecting government's ability to perform its traditional functions."

17   *Wyatt v. Cole*, 504 U.S. 158, 167 (1992).  The Supreme Court has recognized "qualified

18   immunity for government officials where it was necessary to preserve their ability to serve the

19   public good or to ensure that talented candidates were not deterred by the threat of damages suits

20   from entering public service."  *Id.*  These rationales, however, "are not transferable to private

21   parties."  *Id.* at 168.  Thus, private parties sued under § 1983 may not avail themselves of

22   qualified immunity.  *Id.* at 168–69; *Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir. 2019)

23   ("The Supreme Court has held that private parties sued under 42 U.S.C. § 1983 cannot claim

24   qualified immunity . . . .").

25          Accordingly, because it is undisputed Defendant is a private party, the Court finds that

26   Defendant is not entitled to qualified immunity as a matter of law.

27   ///

28   ///

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED. (ECF No. 43.)  The parties are ORDERED to file a Joint Status Report not later than thirty (30) days of the electronic filing of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

DATED: September 29, 2023

Troy L. Nunley
United States District Judge

13